**CITY OF NACOGDOCHES, Appellant,**

v.

**Garland McLEROY and Joe Slay, Appellees.**

**No. 6634.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 12, 1963.

Moss Adams, Jr., Nacogdoches, for appellant.

Fulmer, Fairchild & Badders, Nacogdoches, for appellees.

McNEILL, Justice.

Appellees, two former policemen of the City of Nacogdoches, sued the City under the provisions of Art. 1583–1, Sec. 6A, Vernon's Ann. Penal Code, for wages allegedly due them for working overtime hours per week. These actions were separately instituted but were consolidated and trial before the court resulted in judgments for them.

Sec. 6A of Art. 1583–1, Penal Code, is:

"Sec. 6A. It shall be unlawful for any city having more than ten thousand (10,000) inhabitants, according to the last preceding Federal Census, to re-

quire or permit any policeman to work more hours during any calendar week than the number of hours in the normal work week of the majority of the employees of said city other than firemen and policemen.

"Provided, however, that in any such city having more than ten thousand (10,000) inhabitants, in the event of an emergency, policemen may be required to work more than the number of hours in the normal work week of the majority of other city employees; and in the event policemen are ordered to work a greater number of hours than the number of hours in such normal work week of other city employees, such policemen shall be compensated for any such overtime at a rate equal to one and one-half times the compensation paid to such policemen for regular hours. Added Acts 1959, 56th Leg., p. 781, ch. 356, § 2."

It was shown the City contained more than 10,000 inhabitants according to the last Federal Census and that the City's fiscal year began April 1st. McLeroy claimed the work week for a majority of the City's employees, other than City policemen and firemen, was 44 hrs. per week, but that he was required to work 48 hrs. per week from April 1st, 1960 to January 15, 1961; and Slay claimed he was required to work 48 hrs. per week from April 1st, 1960 to August 9, 1961.

■ Appellant first says the trial court erred in putting it to trial in the consolidated case since the Slay case had not been set for trial prior thereto. The parties had agreed to setting the McLeroy case for trial on October 19, 1962. On that day attorneys for McLeroy moved the cases be consolidated. The motion was granted. Trial then started over the City's objection that it was not ready as to the facts involving Slay's claim. After some discussion, the court assured City it would have time to prepare its defense as to the Slay demand. After hearing the case on October 19th, the court recessed until Thursday of the following week, and stated if the parties were not then ready to resume the trial, he would set it for another date. The following Thursday the trial resumed and no contention was then made that the City was not fully prepared with its defense. The point is without merit.

It is also asserted that the evidence is insufficient to support the judgment. No findings of fact were made. In behalf of appellees it was shown that most of the City's employees, other than firemen and policemen, worked 44 hrs. a week; that this was the desired work time; that the City employees strive for a 44 hr. week; that this was the minimum period of employment. It represented 8 hrs. per day from Monday thru Friday and till 12 noon on Saturday. The City offered in evidence an instrument containing the actual work hours of all employees, other than policemen and firemen, for the period involved. This list shows that the average hours worked per week of these employees were substantially more than 44 hours. Some of these employees were paid by the month, but 59 were hourly employees. The monthly employees were the City Manager, heads of departments and a few foremen. Their work week varied considerably, although there was testimony that even their hours of employment tended to the 5½ day week.

Whether the evidence was sufficient to support the court's implied finding that the "normal work week" of the majority of employees, other than firemen and policemen, was 44 hours, depends upon the meaning of "normal" work week. Is it to be determined by adding up the actual hours the employees worked per week; and if so, what weeks are to be considered? To continue, we quote appellees' argument:

" * * * The statute prohibits, at its very outset, a city from requiring or permitting 'any policeman to work more hours during any calendar week than the number of hours in the normal work week,' etc. This presup-

poses that the 'number of hours in the normal work week' shall be known at least during that week, in order that the city may obey the mandate of the statute. If the actual number of hours worked by the other city employees during that week determines the matter, what the 'normal work week' of the other city employees is cannot be known until the work week has ended, too late for the city to comply with the statute. Is 'normal work week', then, to be determined by averaging the hours worked by the other city employees over a certain number of weeks preceding the particular week involved? If so, over how many weeks? If so, must the normal work week be recomputed at the end of each week?"

█ It is our duty to construe a legislative act so as to make it workable rather than unworkable and futile. 39 Tex.Jur., Sec. 110, p. 205, Sec. 118, p. 222.

█ Appellant says we should take the actual hours worked of employees over the entire period involved and the "average" therefrom would be the "normal" work week. This would take into consideration overtime hours in excess of the basic work week. We do not believe this is the proper construction. Rather the normal work week is that fixed by rule or custom, the regularly established, prescribed, or basic work week. From the City's brief we quote Webster's New Collegiate Dictionary defining "normal" as:

"According to, constituting, or not deviating from, an established norm, rule or principle; standard; regular; natural."

Appellees' brief cites the primary meaning of "normal" in very similar language, their authority being Britannica World Language Edition of Funk & Wagnalls New Practical Standard Dictionary as follows:

"1. In accordance with an established law or principle; conforming to a type or standard; regular; natural."

It was shown in the present case that the basic work week of some 59 hourly employees was 44 hours. This is the "normal" work week of these employees; and they constituted the majority of the City's employees, other than firemen and policemen.

The judgments of the trial court are affirmed.